IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11–cv–00757–MSK–KMT

BASKIN-ROBBINS FRANCHISING, LLC,
BR IP HOLDER, LLC,
DB REAL ESTATE ASSETS I, LLC, and
DB REAL ESTATE ASSETS II, LLC,

      Plaintiffs,

v.

D&G ENTERPRISES, LLC,
G&D ENTERPRISES, LLC, and
DENISE TAYLOR,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

This matter is before the court on Plaintiffs' "Motion for Default Judgment Pursuant to Rule 55(b) of the Federal Rules of Civil Procedure" (Doc. No. 10) filed June 1, 2011 and "Plaintiffs' Supplemental Brief Pursuant to the Court's September 22, 2011 Minute Order" (Doc. No. 23) filed September 26, 2011.  In the motion, Plaintiffs seek judgment against Defendants in the form of permanent injunctive relief; an order compelling the defendants to deliver manuals and other proprietary materials to the plaintiffs; an order compelling Defendants to comply fully with their post-termination obligations under the franchise agreements at issue; money damages in the amount of $58,9045.36; and prejudgment and postjudgment interest, as well as reasonable costs and attorney fees.

## I.     BACKGROUND

Plaintiffs filed their Complaint on March 25, 2011, asserting claims for Trademark Infringement 15 U.S.C. §§ 1114 1125. and Breach of Franchise Agreements, Guarantees and Subleases, related to three Baskins-Robbins Stores.  Defendants failed to answer, move, otherwise plead in response to the Complaint.  As a result, pursuant to Plaintiffs' request, the Clerk of the Court entered default against Defendants.  (*See* Doc. No. 13.)

## II.    JURISDICTION

This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 1338.  Personal jurisdiction and venue are proper under 27 U.S.C. § 1391(b).

## III.   LEGAL STANDARDS

The Court may order a default judgment after the entry of default by the Clerk. Fed. R. Civ. P. 55(b)(2); *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010).  A party against whom default has been entered is deemed to have admitted the facts alleged by the Plaintiffs' complaint. *See Olcott v. Delaware Flood Co.*, 327 F.3d 1115, 1125 (10th Cir. 2003) ("Defendant by his default, admits the Plaintiffs' well-pleaded allegations of fact, is precluded from challenging those facts by the judgment, and is barred from contesting on appeal the facts thus established"). If the facts plead by the complaint sufficiently support a finding of liability by the defendant, the court may enter default judgment.  *Bixler*, 596 F.3d at 796.

Plaintiffs request, among other relief, a permanent injunction against Defendants.  The Patent Act provides that courts "may grant injunctions in accordance with principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems

2

reasonable." 35 U.S.C. § 283.  A Plaintiffs' entitlement to injunctive relief is evaluated under the four-factor test outlined in *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006).  In that case the Supreme Court ruled that a plaintiff must show that "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Id.* at 391.  The decision to grant or deny an injunction "rests within the equitable discretion of the district courts, and that such discretion must be exercised consistent with traditional principles of equity." *Id.* at 394.

## IV.     FINDINGS OF FACT

The following factual allegations contained in Plaintiffs' Complaint are deemed admitted by Defendants:

*The Defendants*

1.      Defendant D&G Enterprises is a Colorado limited liability company, with its principal place of business in Highlands Ranch, Colorado.

2.      Defendant G&D Enterprises is a Colorado limited liability company, with its principal place of business in Highlands Ranch, Colorado.

3.      Defendant Denise Taylor is a member/manager and the registered agent for D&G Enterprises and G&D Enterprises, and on information and belief, she resides in Littleton, Colorado.

*The Baskin-Robbins Trademarks and Proprietary System*

4.      Baskin-Robbins has developed, used and controlled, certain trademarks, service marks, logos, emblems, and other indicia of origin to identify the Baskin-Robbins System, (discussed below) and Baskin-Robbins ice cream and other products, herein after ("the Marks").

5.      The Marks include federally registered trademarks owned by Baskin-Robbins.

6.      The Marks identify for the public the source of Baskin-Robbins products and services and represent to the public the System's high standards of quality, appearance and service.

7.      As a result of an expenditure of time, skill, effort and money, Baskin-Robbins has developed and owns a distinctive system ("the System"), relating to the establishment and operation of food service establishments and other techniques for the distribution of Baskin-Robbins ice cream and other products and services.

8.      Distinguishing characteristics of the System include, without limitation, distinctive exterior design, décor, color scheme and furnishing; special menu items, standards, specifications and procedures for operations; quality of products and services offered; procedures for inventory and management control; training and assistance; and advertising and promotional programs.

*The Highlands Ranch Baskin-Robbins Store*

9.      On December 12, 2007, Baskin-Robbins, as franchisor, and D&G Enterprises, in exchange for the right to use the Marks and the System at the Highlands Ranch Store, D&G agreed, among other things, (a) to report its gross sales to Baskin-Robbins each week; (b)

Robbins a fixed percentage of gross sales as a continuing franchise fee; (c) to pay Baskin-Robbins a fixed percentage of gross sales as a continuing advertising fee; and (d) to pay all other fees and charges associated with store operation.  (Compl., Ex. 1.)

10.     Also on December 12, 2007, Defendant Denise Taylor, ("Taylor"), executed a Personal Guarantee By Shareholders of a Corporation or Members of a Limited Liability Company ("the Highlands Ranch Guarantee"), whereby Taylor agreed that the Highlands Ranch Franchise Agreement would be binding upon her individually.  (*See id.*, Ex. 1, signature page.)

11.     On December 12,2007, D&G executed a Sublease with Plaintiff DB I, regarding the Highlands Ranch Store premises, (the "Highlands Ranch Sublease"), for the purpose and use of operating a Baskin-Robbins store, whereby Taylor agreed that the Sublease would be binding upon her individually.  On June 25, 2010, the Highlands Ranch Sublease was amended.  (*Id.*, Ex. 2.)

*The West Mineral Baskin-Robbins Store*

12.     On August 8, 2008, Baskin-Robbins, as franchisor, and D&G Enterprises ("D&G"), executed a Franchise Agreement (the "West Mineral"), whereby D&G was granted the right to operate a Baskin-Robbins store at 91 West Mineral Avenue, Littleton, CO 80120 (the "West Mineral Store").  In exchange for the right to use the Marks and the System at the West Mineral Store, D&G agreed, among other things, (a) to report its gross sales to Baskin-Robbins each week; (b) to pay Baskin-Robbins a fixed percentage of gross sales as a continuing franchise fee; (c) to pay Baskin-Robbins a fixed percentage of gross sales as a continuing advertising fee; and (d) to pay all other fees and charges associated with store operation.  (*Id.*, Ex. 3.)

13.     Also on August 8, 2008, Taylor executed a Personal Guarantee By Shareholders of a Corporation or Members of a Limited Liability Company ("the West Mineral Guarantee"), whereby Taylor agreed that the West Mineral Franchise Agreement would be binding upon her individually. (*See id.*, Ex. 3., signature page.)

14.     On August 8, 2008, D&G executed a Sublease with Plaintiff DB II, regarding the West Mineral Store premises (the "West Mineral Sublease"), for the purpose and use of operating a Baskin-Robbins store, whereby Taylor agreed that the Sublease would be binding upon her individually.  On June 25,2010, the West Mineral Sublease was amended.  (*Id.*, Ex. 4.)

*The Yosemite Baskin-Robbins Store*

15.     On March 13,2009, Baskin-Robbins, as franchisor, and G&D Enterprises ("G&D"), executed a Franchise Agreement (the "Yosemite Franchise Agreement"), whereby G&D was granted the right to operate a Baskin-Robbins store at 4940 S. Yosemite St., Greenwood Village, CO 80111 (the "Yosemite Store").  In exchange for the right to use the Marks and the System at the Yosemite Store, G&D agreed, among other things, (a) to report its gross sales to Baskin-Robbins each week; (b) to pay Baskin-Robbins a fixed percentage of gross sales as a continuing franchise fee; (c) to pay Baskin-Robbins a fixed percentage of gross sales as a continuing advertising fee; and (d) to pay all other fees and charges associated with store operation.  (*Id.*, Ex. 5.)

16.     Also on March 13, 2009, Taylor executed a Personal Guarantee By Shareholders of a Corporation or Members of a Limited Liability Company ("the Yosemite Guarantee"),

whereby Taylor agreed that the Yosemite Franchise Agreement would be binding upon her individually.  (*See id.*, Ex. 5, signature page.)

*Default and Termination of the Highland Ranch Baskin-Robbins Store*

17.     D&G and Taylor defaulted on their obligations to Baskin-Robbins under the Highlands Ranch Franchise Agreement and the Highlands Ranch Guarantee, respectively, by failing to report gross sales and by failing to pay periodic royalties and advertising fees.  D&G, G&D and Taylor's default on the West Mineral Franchise Agreement and Sublease and the Yosemite Franchise Agreement constitutes a default under the Highlands Ranch Franchise Agreement and Sublease.

18.     Pursuant to Section 9 of the Highlands Ranch Franchise Agreement, on February 8, 2011, Baskin-Robbins gave notice to D&G and to Taylor of defaults by them under the Highlands Ranch Franchise Agreement and the Highlands Ranch Guarantee. (*Id.*, Ex. 6.)

19.     D&G and Taylor failed to cure their defaults within the requisite cure periods.

20.     Accordingly, by letter dated March 9,2011, Baskin-Robbins reasonably and validly terminated the Highlands Ranch Franchise Agreement, in accordance with Section 9 of the Highlands Ranch Franchise Agreement.  Termination was effective upon receipt of the notice.  (*Id.*, Ex. 7.)

21.     Despite reasonable and lawful termination by Baskin-Robbins of the Highlands Ranch Franchise Agreement, D&G and Taylor continue to operate the Highlands Ranch Baskin-Robbins Store and hold themselves out to the public as an authorized franchise of

Baskin-Robbins without the consent of Baskin-Robbins, the Baskin-Robbins trademarks and trade dress to operate the Highlands Ranch Baskin-Robbins Store.

22.     D&G and Taylor's default under the Highlands Ranch Franchise Agreement and nonpayment under the terms of the Highlands Ranch Sublease constitute a breach of the Highlands Ranch Sublease.

*Default and Termination of the West Mineral Baskin-Robbins Store*

23.     D&G and Taylor defaulted on their obligations to Baskin-Robbins under the West Mineral Franchise Agreement and the West Mineral Guarantee, respectively, by failing to report gross sales and by failing to pay periodic royalties and advertising fees.  D&G, G&D and Taylor's default on the Highlands Ranch Franchise Agreement and Sublease and the Yosemite Franchise Agreement constitutes a default under the West Mineral Franchise Agreement and Sublease.

24.     Pursuant to Section 9 of the West Mineral Franchise Agreement, on February 8, 2011, Baskin-Robbins gave notice to D&G and to Taylor of defaults by them under the West Mineral Franchise Agreement and the West Mineral Guarantee.  (*Id.*, Ex. 8.)

25.     D&G and Taylor failed to cure their defaults within the requisite cure periods.

26.     Accordingly, by letter dated March 9,2011, Baskin-Robbins reasonably and validly terminated the West Mineral Franchise Agreement, in accordance with Section 9 of the West Mineral Franchise Agreement.  Termination was effective upon receipt of the notice.  (*Id.*, Ex. 9.)

27.     Despite reasonable and lawful termination by Baskin-Robbins of the West Mineral Franchise Agreement, D&G and Taylor continue to operate the West Mineral Baskin-Robbins Store and hold themselves out to the public as an authorized franchise of Baskin-Robbins without the consent of Baskin-Robbins.  Moreover, D&G and Taylor continue to use, without the consent of Baskin-Robbins, the Baskin-Robbins trademarks and trade dress to operate the West Mineral Baskin-Robbins Store.

28.     D&G and Taylor's default under the West Mineral Franchise Agreement and nonpayment under the terms of the West Mineral Sublease constitute a breach of the West Mineral Sublease.

*Default and Termination of the West Mineral Baskin-Robbins Store*

29.     G&D and Taylor defaulted on their obligations to Baskin-Robbins under the Yosemite Franchise Agreement and the Yosemite Guarantee, respectively, by failing to report gross sales and by failing to pay periodic royalties and advertising fees.  D&G, G&D and Taylor's default on the Highlands Ranch Franchise Agreements and Subleases constitutes a default under the Yosemite Franchise Agreement.

30.  Pursuant to Section 9 of the Yosemite Franchise Agreement, on February 8, 2011, Baskin-Robbins gave notice to G&D and to Taylor of defaults by them under the Yosemite Franchise Agreement and the Yosemite Guarantee.  (*Id.*, Ex. 10.)

31.     G&D and Taylor failed to cure their defaults within the requisite cure periods.

32.     Accordingly, by letter dated March 9, 2011, Baskin-Robbins reasonably and validly terminated the Yosemite Franchise Agreement, in accordance with Section 9 of the

9

Yosemite Franchise Agreement.  Termination was effective upon receipt of the notice.  (*Id.*, Ex. 11.)

33.     Despite reasonable and lawful termination by Baskin-Robbins of the Yosemite Franchise Agreement, G&D and Taylor continue to operate the Yosemite Baskin-Robbins Store and hold themselves out to the public as an authorized franchise of Baskin-Robbins without the consent of Baskin-Robbins.  Moreover, G&D and Taylor continue to use, without the consent of Baskin-Robbins, the Baskin-Robbins trademarks and trade dress to operate the Yosemite Baskin-Robbins Store.

## V.     ANALYSIS

### A.     Damages

Default judgment cannot be entered until the amount of damages has been ascertained. *See Herzfeld v. Parker*, 100 F.R.D. 770, 773 (D. Colo. 1984).  Actual proof must support any default judgment for money damages where there is an uncertainty as to the amount.  *Klapprott v. United States*, 335 U.S. 601, 611–12 (1949); *Top Rank, Inc. v. Fey*, No. 08-cv-00480-RPM, 2009 WL 1384171, at *3 (D. Colo. 2009).  In ruling on a motion for default judgment, the court may rely on detailed affidavits or documentary evidence to determine the appropriate sum for the default judgment.  *Fanning v. Permanent Solution Industries, Inc.*, 257 F.R.D. 4, 7 (D.D.C. 2009).

In their Complaint, Plaintiffs sought money damages in the amount of $37,442.10.  In their Motion, they seek money damages in the amount of $58,945.36.  Plaintiffs provide the Affidavit of Gary Zullig, a Collection Specialist for Dunkin Brands, Inc., which provides

collection services to Baskin-Robbins Franchising, LLC.  (Doc. No. 10-7.)  Mr. Zullig avers that

the defendants owe $58,945.36 in principal and late fees, as evidenced by the Accounts

Receivable Status Report also attached to the Motion.  (Doc. Nos. 10-6 and 10-7.)  Thus,

Plaintiffs have established that they are entitled to judgment for the principal and late fees in the

amount of $58,945.36.

Plaintiffs also seek prejudgment interest at the rate of 18 percent per annum, apparently

pursuant to the Subleases executed by the parties.  (Doc. No. 10-7, ¶ 2; *see* Doc. Nos. 1-2, ¶ 9.4;

1-4, ¶ 9.4.)  However, because the breach of contract claim is a state law claim, the Court applies

Colorado state law in determining the prejudgment interest issue.  In Colorado, the statutory

default rate of eight percent per annum for prejudgment interest applies.  Col. Rev. Stat. §

5-12-102.  Plaintiffs also seek post-judgment interest, which is determined as a matter of federal

law at the rate specified in 28 U.S.C. § 1961 as of the date of entry of the judgment.  Thus, the

court finds an award of prejudgment interest at the rate of eight percent per annum and

postjudgment interest under federal law is appropriate.

### B.     *Injunctive Relief*

In their Motion, Plaintiffs also seek injunctive relief.  A plaintiff's entitlement to

injunctive relief is evaluated under the four-factor test outlined in *eBay Inc. v MercExchange*,

LLC, 547 U.S. 388 (2006).  There, the Supreme Court ruled that a plaintiff must show "(1) that it

has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages,

are inadequate to compensate for that injury; (3) that, considering the balance of hardships

between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  *eBay*, 547 U.S. at 394.

### 1.    *Irreparable Harm*

Irreparable harm "is often suffered when the injury can[not] be adequately atoned for in money . . . or when the district court cannot remedy [the injury] following a final determination on the merits."  *Wald v. Mudhopper Oilfield Services, Inc.*, No. CIV-04-1693-C, 2006 WL 2128851, at * 5 (W.D. Okla. 2006) (quoting *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001)).  "It is 'well settled doctrine that a terminated franchisee's continued use of its former franchisor's trademarks, by its very nature, constitutes trademark infringement."  *Big O Tires, LLC v. JDV, LLC*, No. 08-cv-01046-WYD, 2008 WL 4787619, at *3 (D. Colo. Oct. 31, 2008) (quoting *Burger King Corp. v. Majeed*, 805 F.Supp. 994, 1002 (S.D. Fla. 1992)).  Damages caused by trademark infringement "by their very nature are irreparable and not susceptible of adequate measurement for remedy at law."  *Int'l Kennel Club of Chicago v. Mighty Star*, 846 F.2d 1079, 1092 (7th Cir. 1988).  *See also Big O Tires, Inc. v. Bigfoot 4x4*, 176 F. Supp. 2d 1216 (D. Colo. 2001). "[T]rademarks backed by national advertising and other promotional expenses constitute property which can be irreparably injured by unauthorized use."  *Burger Chef Systems, Inc. v. MPG, Inc.*, 530 F Supp. 1, 2 (N.D. Okla. 1979).

Defendants possess, operate and continue to utilize the Baskin-Robbins Marks and System, giving the impression that it remains or is a franchise in good standing in the Baskin-Robbins Franchise System.  Plaintiffs have spent considerable money and years efforts to establish and maintain high standards for the production and sale of Baskin-Robbins ice cream

and products, which effort the Defendants cannot attain.  Without an injunction the strong

reputation of this popular product could be forever tarnished. The court agrees with the plaintiffs

that Defendants' conduct in continuing to possess and operate the Baskin-Robbins Marks and

System has caused Plaintiffs irreparable harm.

### 2.      *Insufficient Remedies Available at Law*

The Franchisor's interest in protecting a Trademark are similar to one's interest in

protecting a patent.  Where the defendant produces a product violating a patent, the infringement

upon the exclusive right to practice the teachings of a patent cannot be adequately compensated

by monetary damages.  *See Atlas Powder Co. v. Ireco Chems.*,773 F.2d 1230, 1233 (Fed. Cir.

1985) ("if monetary relief were the sole relief afforded by the patent statute then injunctions

would be unnecessary and infringers could become compulsory licensees for as long as the

litigation lasts").  Similarly, with trademark infringement, if monetary damages were sufficient,

the infringer could use the Marks for as long as the litigation lasts.  In such cases, "monetary

damages are not an adequate remedy against future infringement because the principal value of a

patent is its statutory right to exclude."  *Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*,

397 F. Supp. 2d 537, 546 (D. Del. 2005).

Here, the established facts are that Defendants have caused customer confusion by using,

utilizing and possessing Plaintiffs' Marks despite the proper termination of its three

Baskin-Robbins franchises, causing damage to Plaintiff.  The loss of consumer goodwill caused

by confusion over the source of the infringing product and or affiliation with Baskin-Robbins,

the damage to Plaintiff's reputation as a provider of quality ice cream, the invasion upon its right

to exclude others, and the nullification of its right to control the terms of the use of its product

and Marks, are injuries that cannot be adequately remedied by a monetary award.  In addition,

there are certain tangential benefits associated with patent rights and Trademark rights, such as

a marketplace reputation for enforcing one's patents and trademarks, the value of which cannot be

quantified in monetary damages. *See generally Reebok Int'l, Ltd. v. J. Baker, Inc.*, 32 F.3d 1552,

1557 (Fed. Cir. 1994).

### 3.  *Balance of Hardships*

The balance of the relative hardships in this case clearly favors an injunction.

Defendants have willfully avoided addressing concerns over the appropriation of Plaintiffs'

intellectual property, they have failed to participate in this litigation, and have given no basis for

the court to believe that they would not resume their infringing activities after the cessation of

this action. Defendants refused to submit sales reports and to pay Franchise and Advertising fees,

yet continue to reap the benefits of Plaintiffs' national advertising campaign and recognition by

the public.  By operating outside the normal supervision of Plaintiffs, defendants cannot

effectively be held to the standards of quality that Plaintiffs demand, and the plaintiffs'

customers expect.  A lack of quality goods in one franchise's stores will bring harm to all the

franchisees.

### 4.  *Public Interest*

Finally, the public's interest would be best served by a permanent injunction in this

matter.  There is a "substantial interest in enforcing valid United States patents." *Fisher-Price v.*

*Safety 1st, Inc.*, 279 F. Supp. 2d 526, 528 (D. Del. 2003).

> A licensee or franchisee who once possessed authorization to use the trademarks of its licensor or franchisor becomes associated in the public's mind with the trademark holder.  When such party . . . loses its authorization yet continues to use the mark, the potential for consumer confusion is greater than in the case of a random infringer.  Consumers have already associated some significant source identification with the licensor.  In this way the use of a mark by a former licensee confuses and defrauds the public.

*BioCore, Inc. v. Khosrowshahi*, CIV. A. 98–2031–KHV, 1999 WL 156060, at *2 (D. Kan. Jan. 6, 1999) (quoting *Church of Scientology Int'l v. Elmira Mission of the Church of Scientology*, 794 F.2d 38, 44 (2d Cir.1986)).  This court finds "no countervailing harm to the public in granting the requested injunctive relief."  *Fisher-Price*, 279 F. Supp. 2d at 528.

Thus, analysis of the four-factor test set forth in *eBay Inc. v. MercExchange*, *supra*, results in the conclusion that Plaintiff is entitled to permanent injunctive relief.  *See Richardson v. Suzuki Motor Co., Ltd.*, 868 F.2d 1226, 1247 (Fed. Cir. 1989).

### C.    *Attorneys' Fees*

Plaintiffs seek an award of attorneys' fees in the amount of $5,174.50.  Although the attorneys' fees provision of the Lanham Act, 15 U.S.C. § 1117(a), provides that where a violation is established "the plaintiff shall be entitled . . . to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action," the statute provides no similar entitlement to attorneys' fees.  Instead, § 1117(a) provides that the court "in exceptional cases may award reasonable attorney fees to the prevailing party." § 1117(a).

Exceptional circumstances exist where the trademark infringement at issue "can be characterized as malicious, fraudulent, deliberate, or willful."  *Bishop v. Equinox Int'l Corp.*, 154 F.3d 1220, 1224 (10th Cir. 1998) (internal quotations omitted).  Considering the record before

the court, the court finds exceptional circumstances are present–such as the defendants' willful,

continued possession and use of the Baskin-Robbins Marks and System–to justify an award of

attorneys' fees.

In considering the reasonableness of the attorneys' fees associated with this case, the

court notes that Plaintiffs' counsel submitted an affidavit with the Motion, which sets forth the

rates for the personnel involved in prosecuting the case, as well as the hours expended by each

person.  Upon a review of the affidavit and supporting documents, and based on the fact that this

action involves complex federal trademark infringement issues, the court finds the attorneys'

fees requested by Plaintiffs' counsel are reasonable and the time expended was appropriate.

Finally, the court finds the hourly rates charged by counsel are comparable to those charged by

lawyers of comparable skill and experience practicing in this area.  Thus, Plaintiffs' are entitled

to recover attorneys' fees in the amount of $5,174.50.

### D.    *Costs and Expenses*

Plaintiffs seek $497.24 for filing fees and Federal Express delivery charges.  These

expenses are considered "costs" which may be taxed by the Clerk against the losing party

pursuant to Fed. R. Civ. P. 54(d)(1).  Plaintiffs may seek these expenses separately by filing an

appropriate bill of costs with the Clerk.

WHEREFORE, for the foregoing reasons, the court

**RECOMMENDS** that Plaintiffs' "Motion for Default Judgment Pursuant to Rule 55(b)

of the Federal Rules of Civil Procedure" (Doc. No. 10) be GRANTED as follows:

1.      Plaintiffs should be granted judgment against Defendants D&G Enterprises, LLC, G&D Enterprises, LLC and Denise Taylor, jointly and severally, for all damages caused by their trademark infringement and/or breaches of the Highlands Ranch Franchise Agreement and Sublease, the West Mineral Franchise Agreement and Sublease, the Yosemite Franchise Agreement, and the associated Guarantees, for principal and late fees in the amount of $58.945.36, as well as prejudgment interest at the rate of eight percent per annum and postjudgment interest to be calculated as specified in 28 U.S.C. § 1961;

2.      Plaintiffs should be granted permanent injunctive relief against Defendants D&G Enterprises, LLC, G&D Enterprises, LLC and Denise Taylor

      (a)      prohibiting them from directly, indirectly or in any manner whatsoever, using infringing or diluting the Baskin-Robbins Marks or the System at the Highlands Ranch Store, the West Mineral Store, or the Yosemite Store;

      (b)      compelling them to deliver to Baskin-Robbins all manuals and other Baskin-Robbins proprietary materials and information pertinent to operation of each Baskin-Robbins Store;

      (c)      compelling them to comply fully with all of their post-termination obligations under the Highlands Ranch Franchise Agreement, the West Mineral Agreement, and the Yosemite Agreement; and

3.      Plaintiffs' should be granted attorneys' fees in the amount of $5,174.50; and

4.      Plaintiffs should be awarded costs and expenses, to be awarded by the Clerk, upon filing an appropriate bill of costs pursuant to Fed. R. Civ. P. 54(d)(1).

**ADVISEMENT TO THE PARTIES**

Within fourteen days after service of a copy of the Recommendation, any party may

serve and file written objections to the Magistrate Judge's proposed findings and

recommendations with the Clerk of the United States District Court for the District of Colorado.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A

general objection that does not put the district court on notice of the basis for the objection will

not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's

report and recommendation must be both timely and specific to preserve an issue for de novo

review by the district court or for appellate review." *United States v. One Parcel of Real Prop.*

*Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to

make timely objections may bar *de novo* review by the district judge of the magistrate judge's

proposed findings and recommendations and will result in a waiver of the right to appeal from a

judgment of the district court based on the proposed findings and recommendations of the

magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's

decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection

does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at

1059-60 (a party's objections to the magistrate judge's report and recommendation must be both

timely and specific to preserve an issue for *de novo* review by the district court or for appellate

review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir.

1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had

waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342,

18

1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

 Dated this 12th day of October, 2011.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge

19